**State v. White**
**Case No. 56518**
**Cuyahoga County, (8th)**
**Decided February 8, 1990**
*(Cite as 1 AOA 276)*

*George Lonjak, Esq., Asst. County Prosecutor, Justice Center - 8th Floor, 1200 Ontario Street, Cleveland, Ohio 44113, for plaintiff-appellee,*

*Robert A. Dixon, Esq., 1280 West Third Street, Third Floor, Cleveland, Ohio 44113, for defendant-appellant.*

DYKE, J.

On March 2, 1988 the appellant David White and co-defendant Gene Gareau were indicted by the Cuyahoga County Grand Jury in Case Number 225956 in a single count indictment charging the aggravated murder of James Bass (R.C. 2903.01) with firearm specification.

After arraignment and entry of a plea of not guilty, jury trial was held before the Honorable Donald Nugent of the Cuyahoga County Common Pleas Court on August 17, 1988.

During trial the State dismissed the charge against the co-defendant Gareau. On August 25, 1988 the jury returned its verdict finding the appellant guilty of the lesser included offense of murder without a finding of guilt on the firearm specification.

I
THE APPELLANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL WHEN THE LOWER COURT DENIED HIS MOTION FOR SEVERANCE AND SUBSEQUENT MOTION FOR MISTRIAL BASED THEREON.

In his first assignment of error appellant complains that the trial court erred when it denied his motion to sever his aggravated murder trial from the aggravated murder trial of Gene Gareau. Appellant and co-defendant Gene Gareau were indicted for aggravated murder, a violation of R.C. 2903.01, without specifications of aggravating circumstances.

Criminal Rule 14 provides in part:

"If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, information or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

"Absent some abuse of discretion, to be demonstrated by a clear showing of prejudice and the consequent denial of a fair trial, the determination is not subject to reversal." *State v. Perod* (1968), 15 Ohio App. 2d 115. Thus, in order to substantiate a claim of prejudicial joinder, the appellant must affirmatively demonstrate that his rights were prejudiced and that the trial court abused its discretion.

Appellant argues that the defendants' defenses were antagonistic and thus their joinder was prejudicial. The appellant has failed to demonstrate that his rights were actually prejudiced. His allegations are unsupported given the entire record in this instance.

Appellant further contends under this first assignment of error that the state's dismissal of his co-defendant and their use of his testimony at trial created a prejudicial effect and thus a new trial is mandated. On this record, we are unable to say that appellant has demonstrated compelling prejudice sufficient enough to require a new trial. Appellant's co-defendant was subjected to a vigorous and thorough cross-examination by appellant. His credibility was thoroughly explored. His past convictions were revealed to the jury as well as his reasons and motivations for testifying. It was the jury's function to assess his reliability and credibility, and they had before it information by which such judgment could be made. Appellant argues that he was prejudiced because the state's dismissal of charges against his co-defendant bolstered the co-defendant's testimony against him. This argument lacks merit for two reasons. Firstly, it is speculation that the dismissal bolstered the state's case. It is equally possible that the jury could have been swayed by the dismissal to disbelieve the state, as the state had in opening arguments stated that the evidence would show that the co-defendant was guilty of aggravated murder. Secondly, the cross-examination of the co-defendant completely revealed his motivation for testifying, i.e., that the charges for aggravated murder were dropped in exchange for his testimony. The jury was given a detailed picture of the co-defendant's history and person, and as a result were in a position to judge his credibility. We will not disturb their apparent finding that the co-defendant was telling the truth. *State v. DeHass* (1967), 10 Ohio St. 2d 230.

The first assignment of error is overruled.

## II
## THE VERDICT AND JUDGMENT OF THE LOWER COURT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

In his second assignment of error, appellant argues that the evidence linking him to the killing was minimal and weak. Appellant states that the evidence was

insufficient as a matter of law and thus against the manifest weight.

A challenge to the sufficiency of the evidence supporting a conviction requires us to view evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St. 2d 261; *State v. Martin* (1983), 20 Ohio App. 3d 172. Our review of a challenge to the manifest weight of the evidence is broader. *Martin, supra* at 175. As the *Martin* court stated:

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
>
> The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.* (Citations omitted.)

We further note that evaluating witness credibility is primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St. 2d 230.

R.C. 2903.02 defines murder and states in relevant part:

(A) No person shall purposely cause the death of another.

The evidence at trial showed that on March 4, 1988 Gene Gareau went to the King's Motel in Strongsville where his nephew, the appellant, David White had a room adjoining that of the decedent, James Bass. Present at the hotel were: Margaret Scampatilla, appellant's aunt; Kelly Higgins, appellant's girlfriend; June Letizio, decedent's girlfriend and; Patty White, appellant's sister. All of these individuals used cocaine that evening for several hours.

At approximately 9:00 p.m. James Bass left the hotel to buy some cocaine and returned. At some point after Bass returned, Gene Gareau left the hotel for a little while and returned about 1:30 a.m. on March 5, 1988. Upon Gareau's return, he saw appellant, accompanied by Margaret Scampatilla, Kelly Higgins and Patty White, leave the hotel in a van. Appellant dropped Kelly Higgins and Patty White off at his uncle Raymond Gareau's house on Rocky River Drive. Appellant proceeded on with Margaret.

At trial, appellant and Gareau essentially agreed on the above statement of the night's events. However, their versions of the remainder of that night's events were divergent.

Appellant claimed that after he dropped of Kelly Higgins and Patty White, he drove Margaret to the residence of another aunt and uncle, Ed and Ann Medardi, and dropped her off. Appellant claimed he stayed approximately 20 minutes at their home and then left. Appellant claimed he returned to the Raymond Gareau home where he stayed the remainder of the evening.

According to Gene Gareau, he and Bass left the King's Motel and met appellant in the parking lot of a bar on Brookpark Road. Gareau claimed Margaret was still with appellant. Gareau stated that from there they all drove to a Denny's restaurant. Gareau and James Bass were in Bass' truck and were followed by David White and Margaret in a van. Gareau claimed that in the Denny's parking lot, he got out of the truck and went over to appellant. Gareau claimed that when he opened the van's door, appellant tried to hand him a .32 pistol stating that Gareau should kill James Bass. Gareau testified that he refused, and tried to talk appellant out of killing Bass. Gareau testified that appellant got out of his van and got in the truck with Bass. Gareau stated that Margaret then got out of appellant's van and went into the Denny's Restaurant. Gareau claimed he then just drove around in the van for a little while. Gareau stated that he returned to Denny's to pick up Margaret and saw appellant running. Gareau testified that he picked up the appellant. Gareau testified that appellant told him he had shot James Bass twice. Gareau and appellant then drove to the Medardi residence and sent Ed Medardi to Denny's in order to pick up Margaret. At the Medardis, Gene claimed he took a gun from appellant because appellant stated he wanted to kill a possible witness to the killing. Gareau testified that he took the gun to the residence of Katherine White, the appellant's mother. Gareau claimed that Katherine White wrapped the gun in a shirt. Gareau admitted to disposing of the gun by placing it in a toilet at a local bar, Jamie Ryan's Pub. The weapon was later discovered by the pub owner and turned over to the police.

Appellant testified and denied ever going with Margaret to a bar on Brookpark Road and meeting James Bass and Gareau. Appellant denied going to Denny's, denied shooting Bass and denied ever seeing the murder weapon.[1]

Dennis Smith, a newspaper carrier, testified that on the morning of March 5, 1988 he discovered the body of James Bass slumped behind the wheel of a pickup truck near the corner of W. 145th and Sprengel Avenue in Cleveland. Upon arrival of the police, it was discovered that Bass had been shot twice. Frank Chin, a resident of the area, testified that he heard two gunshots between 1:30 a.m. and 2:00 a.m.

Detective James Yonkers, a ballistics expert, testified that an empty shell casing found in the trunk and the two pellets recovered from the victim's body were fired by the .32 caliber weapon found at Jamie Ryan's Pub. The evidence at trial showed that Patty White, appellant's sister, upon being shown the gun by police, initially stated that she thought it belonged to David. She later changed her opinion.

Detective Prinz of the Cleveland Police Department Latent Fingerprint Section, testified that appellant's fingerprint was found on a beer bottle in the truck in which James Bass was found dead.

At trial Ed Medardi testified that on the morning of Bass' murder, Gene Gareau and appellant came to his home in a van around 2:30 a.m. Ann Medardi was also home the day of the shooting. She testified that around 2:50 a.m. the morning that Bass was killed, she heard her nephew's voice in her home and a few minutes later heard Gene Gareau's voice.

We find that, based upon this evidence, the jury could reasonably conclude that

appellant, David White, purposely caused the death of another. Although the credibility of Patty White, Ed and Ann Medardi, and Gene Gareau was seriously called into question when each was shown to be a liar and an addict, and in Gareau's case a convicted felon, it was the jury's duty to assess each witness's weakness and motivation and discern whether critical testimony was believable. The jury obviously chose to believe Gareau's version of the events and we will not disturb their assessment.

Further, critical points of Gareau's testimony was independently and probably unwittingly corroborated by Ed and Ann Medardi, i.e., that appellant and Gene Gareau were at their home the night of the killing. This evidence directly contradicts the appellant's version that he never travelled with Gareau that evening. Furthermore, appellant's finger prints were found in the defendant's truck, and his sister initially identified the murder weapon as belonging to appellant. The weapon found in Jamie Ryan's Pub, which Gene Gareau and Patty White claimed belonged to appellant, was identified as the murder weapon. We note that appellant, on the stand, had large lapses of memory concerning the events immediately following the murder which may have contributed to his unbelievability. Again, the jury had before it sufficient evidence to convict appellant of the murder, and the verdict was not against the manifest weight. Lastly, it was their determination to assess the credibility of each witness. We will not disturb their assessment.

The second assignment of error is overruled.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

CORRIGAN, P.J., and SWEENEY, J. concur.

---

[1] At the time of trial Margaret Scampatilla had violated a court order to appear as a witness. Her version of the night's events were never heard.